UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

KAMI REED-WALTER,

          Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

NO. C14-5387-TSZ-JPD

REPORT AND
RECOMMENDATION

Plaintiff Kami Reed-Walter appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

I.     FACTS AND PROCEDURAL HISTORY

At the time of her date last insured in June 2008, plaintiff was a 46 year old woman with a high school equivalent education. Administrative Record ("AR") at 57-58, 172, 181, 185. Her past work experience includes employment as a property manager, sales manager, a social service aid, kitchen helper, dishwasher, cook, food server, and grocery checker. AR at 69-79, 97-98. Plaintiff was last gainfully employed in 2008. AR at 69, 176-82.

REPORT AND RECOMMENDATION - 1

On December 10, 2010, plaintiff filed an application for DIB, alleging an onset date of May 21, 2008. AR at 33, 172-75. For purposes of DIB, plaintiff's date last insured is June 30, 2008. AR at 181. Plaintiff asserts that she is disabled due to neck pain, depression, and breathing difficulties. AR at 189.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 108-11, 116-17. Plaintiff requested a hearing which took place on November 16, 2012. AR at 49-103. On December 26, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform work existing in significant numbers in the national economy including work as a folding machine operator, bagger, and sorter/packer. AR at 30-48. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 8, 2014, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. § 405(g).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Ms. Reed-Walter bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national

REPORT AND RECOMMENDATION - 3

economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. § 404.1520(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 404.1520(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

whether she can still perform that work. 20 C.F.R. § 404.1520(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On December 26, 2012, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2008.

2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of May 21, 2008 through her date last insured of June 30, 2008.

3. Through the date last insured, the claimant had the following severe impairments: cervicalgia; major depressive disorder; narcotic dependence; and asthma.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she was limited to occasional stooping, crouching and crawling. She could never climb ropes, ladders or scaffolds. She could occasionally reach overhead. She needed to avoid concentrated exposure to extreme cold, heat, humidity, vibrations, fumes, odors, dusts, gases and hazards. She was limited to unskilled work with simple routine tasks. She would have been off task an average of up to 10% of the time.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 21, 2008, the alleged onset date, through June 30, 2008, the date last insured.

AR at 35-43.

## VI.   ISSUES ON APPEAL

As identified in plaintiff's Opening Brief, the principal issue on appeal is:

1. Whether the ALJ provided sufficient reasons to reject the opinion of examining psychologist Janis L. Lewis, Ph.D.

Dkt. No. 16 at 1.

## VII.   DISCUSSION

Plaintiff argues that the ALJ provided insufficient reasons to reject the opinion of examining psychologist Janis. L. Lewis, Ph.D. Dkt. 16 at 4-10. Dr. Lewis examined plaintiff and completed a records review in November 2012, more than four years after the relevant period in plaintiff's claim. AR at 658-86. Dr. Lewis offered the retrospective opinion that the severity of plaintiff's mental impairments met the severity of Listings 12.04, for affective disorders, and 12.07, for somatoform disorders. *See* AR 672-85. Dr. Lewis further opined that plaintiff would experience significant loss of productivity (20 to 30 percent) in multiple areas

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

of work related functioning. AR at 668-71. Plaintiff argues this opinion is significant because the vocational expert testified that no jobs would be available to an individual who was off task an average of 20 percent of the work day. AR at 100.

The ALJ gave little weight to Dr. Lewis's opinion because: (1) Dr. Lewis used plaintiff's level of functioning at the time of the 2012 evaluation to determine plaintiff's functional limitations in 2008; (2) Dr. Lewis's opinion is inconsistent with the objective medical evidence during the relevant period that suggests plaintiff's suicide attempt was largely attributable to neck pain and situational stressors and that plaintiff's mood and affect improved quickly during her voluntary inpatient psychiatric admission; (3) Dr. Lewis's opinion is inconsistent with plaintiff's own statements regarding the severity of her impairments during the period in question. AR at 40. These are specific and legitimate reasons supported by substantial evidence sufficient to reject the opinion of an examining psychologist. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

REPORT AND RECOMMENDATION - 7

making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

As a threshold matter, it is important to note that Dr. Lewis had no direct or personal knowledge of plaintiff's condition until 2012, approximately four years after the period at issue in this claim.  For purposes of rendering a retrospective opinion regarding plaintiff's mental limitations during a narrow period of time in 2008, Dr. Lewis was essentially in the same

position as the non-examining state agency psychologists. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (characterizing the retrospective opinion of a treating physician as "scarcely different" from the opinion of any non-treating physician with respect to the period at issue); *see also Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (opinion of psychiatrist who examines claimant after expiration of his or her disability insured status is entitled to less weight than that of psychiatrist who completed contemporaneous examination).

Turning now to the substance of the ALJ decision, the first reason offered by the ALJ, that Dr. Lewis used plaintiff's 2012 level of functioning to determine plaintiff's ability to function in 2008, is not supported by substantial evidence in the record. This is because plaintiff submitted new evidence from Dr. Lewis for the first time to the Appeals Council. *See* AR at 2-5, 691-94. This evidence clarifies the sources that Dr. Lewis relied on to formulate her opinion regarding plaintiff's level of functioning in 2008. *See* AR at 692-94. In this new evidence, Dr. Lewis explains that her opinion was based on a variety of historical sources, including medical records from the relevant period, as well as the narrative provided by plaintiff at the time of the evaluation. AR at 692-94. This explanation, read in conjunction with Dr. Lewis's evaluation, makes clear that Dr. Lewis relied on more than plaintiff's presentation at the evaluation and plaintiff's description of her current functioning when Dr. Lewis formulated her opinion regarding plaintiff's limitations in 2008. *See* AR at 658-667, 692-94. Nonetheless, because the ALJ offered two additional specific and legitimate reasons that are supported by substantial evidence in the record, this Court finds no reason to disturb the ALJ's rejection of Dr. Lewis's medical opinion.

The ALJ also rejected Dr. Lewis' opinion, in part, because Dr. Lewis's opinion is inconsistent with the objective medical evidence during the relevant period, which suggests that plaintiff's suicide attempt was largely attributable to situational stressors and that

REPORT AND RECOMMENDATION - 9

plaintiff's mood and affect improved quickly during her voluntary inpatient psychiatric admission. AR at 40. An ALJ may reject the retrospective opinion of an examining psychologist if that opinion is inconsistent with the findings and opinions of other doctors who examined a claimant during the period at issue. *Magallanes*, 881 F.2d at 754.

The record supports that plaintiff was admitted to St. Peter Hospital on May 18, 2008, following a suicide attempt. AR at 286. After being treated for an overdose, plaintiff was transferred to the surgical unit and underwent a cervical discectomy and fusion. AR at 298-99. Following surgery, plaintiff reported being pleased with her diminished pain levels. AR at 278.

Plaintiff was then voluntarily admitted to the psychiatric unit on May 23, 2008. AR at 278-84. She was discharged from the hospital five days later. AR at 278-79. During this hospital stay plaintiff explained that she became increasingly depressed over the several months leading up to her suicide attempt due to a combination of stressors including loss of medical coverage, marital difficulties, and financial difficulties. AR at 278, 280. However, the records from plaintiff's psychiatric hospitalization indicate that plaintiff's depressive symptoms resolved quickly during her stay. As noted by the ALJ, plaintiff's discharge summary describes her as bright and positive during the hospital stay. AR at 39 (citing AR at 278). It is also important to note that plaintiff's performance on mental status examination during her hospital admission was largely within normal limits.[3] *See* AR at 281-82. Also consistent with the ALJ's finding is the fact that Robert J. Williams, D.O., who treated plaintiff during the hospitalization, *see* AR at 280-82, declined to prescribe plaintiff antidepressant medication because plaintiff was "endorsing a very upbeat mood, very optimistic at this time,

---

[3] In contrast, plaintiff exhibited greater difficulty with mental status testing when examined by Dr. Lewis four years later. *See* AR 664-66.

REPORT AND RECOMMENDATION - 10

denying suicidal ideation and it appears that her depression was very situation dependent…" AR at 282; *see* AR at 39.

This evidence supports the ALJ's determination that plaintiff's mental functioning improved following plaintiff's surgery and psychiatric hospitalization and that plaintiff's suicide attempt was largely in response to situational stressors. Further, the ALJ's determination that this evidence conflicts with the opinion offered by Dr. Lewis regarding plaintiff's mental limitations is reasonable. Although plaintiff argues for a more favorable interpretation of the medical evidence, when the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954.

The ALJ also rejected Dr. Lewis's medical opinion because Dr. Lewis's opinion is inconsistent with plaintiff's own statements regarding the severity of her impairments during the period in question. AR at 40. An ALJ may properly reject a physician's opinion if that opinion conflicts with other medical evidence in record and plaintiff's own subjective complaints. *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989). Here, the ALJ noted that during plaintiff's psychiatric hospitalization, plaintiff endorsed being pleased with the results of her cervical surgery as well as being pleased with her general sense of diminished pain. AR at 39 (citing AR at 278). Plaintiff also endorsed an upbeat mood. AR at 39 (citing AR at 282). Plaintiff denied continued suicidal ideation and spoke optimistically about her circumstances. AR at 39 (citing AR at 282).

The ALJ's finding that plaintiff's statements regarding the severity of her impairments during this period are inconsistent with Dr. Lewis's characterization of plaintiff's impairments is a reasonable interpretation of this evidence. *See Richardson*, 402 U.S. at 401 ("substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a

REPORT AND RECOMMENDATION - 11

conclusion).  For these reasons, the ALJ's finding that Dr. Lewis's opinion is inconsistent with plaintiff's own statements during the period at issue is supported by substantial evidence.

As noted previously, because the ALJ offered two specific and legitimate reasons supported by substantial evidence to reject the medical opinion of Dr. Lewis, this Court finds no reason to disturb the ALJ's rejection of Dr. Lewis's retrospective medical opinion.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED and this case dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 20, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 27, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 6th day of February, 2015.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge